# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUZANNE HELLER,<br><br>   Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>   Defendant. | CIVIL ACTION NO. 1:16-CV-00360<br><br>(MEHALCHICK, M.J.) |

## MEMORANDUM

  This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Suzanne Heller's claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. (Doc. 1). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Court finds that the Commissioner's decision should be vacated and the matter remanded for further review.

**I. BACKGROUND AND PROCEDURAL HISTORY**

  On January 9, 2013, Heller filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning August 8, 2012. (Doc. 13, at 2). Her claim was denied on April 11, 2013, and she requested a hearing by an Administrative Law Judge ("ALJ"). (Doc. 13, at 2). A hearing was conducted by ALJ Scott M. Staller on August 19, 2014. (Doc. 13, at 2). In a written decision dated August 28, 2014, the ALJ determined Heller was not disabled and therefore not entitled to benefits. (Doc. 13, at 2). Heller appealed

this decision to the Appeals Council on October 13, 2014, who denied her appeal on January 15, 2016. (Doc. 13, at 2).

On February 29, 2016, Heller filed the instant complaint. (Doc. 1). The Commissioner responded on June 9, 2016, providing the requisite transcripts. (Doc. 8; Doc. 9). The parties then each filed their respective briefs. (Doc. 13; Doc. 17; Doc. 18). In her brief, Heller argues the ALJ's erred in five respects: that he should have found Heller's impairments met or equaled Listings 12.04 and 12.06; substantial evidence does not support the ALJ's evaluation of opinion evidence; the ALJ's RFC is not supported by substantial evidence; the ALJ improperly evaluated Heller's GAF scores; and that substantial evidence does not support the ALJ's credibility assessment. (Doc. 13, at 1-2). The Commissioner disagreed with each of Heller's arguments. (Doc. 17). The Commissioner and Heller consented to the jurisdiction of the undersigned on November 16, 2016. (Doc. 24).

All transcripts received and the positions fully briefed, the matter is ripe for review.

## II. THE ALJ'S DECISION

In his decision dated August 28, 2014, the ALJ determined Heller "is not disabled under sections 216(i) and 223(d) of the Social Security Act." (Doc. 9-2, at 53). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520. The ALJ determined that Heller meets the insured status requirements of the Social Security Act through December 31, 2017. (Doc. 9-2, at 44).

At step one of the five-step analysis, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). SGA is defined as work activity—requiring

significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574. The ALJ determined Heller "has not engaged in substantial gainful activity since August 8, 2012, the alleged onset date." (Doc. 9-2, at 44). The ALJ acknowledged Heller performed part-time work at home as a bookkeeper for a non-profit organization roughly 5-10 hours per week, however determined that it did not rise to the level of SGA. (Doc. 9-2, at 44). Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(a)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore not disabled." 20 C.F.R. § 1520(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ found Heller had seven severe impairments: status post two transient ischemic attacks; osteoarthritis; adhesive capsulitis of the left shoulder status post rotator cuff repair; hyperparathyroidism status post hemi parathyroidectomy; chronic kidney disease – stage 3; major depressive disorder; and post-traumatic stress disorder ("PTSD"). (Doc. 9-2, at 44). The ALJ also noted non-severe impairments of hypertension and Barrett's esophagus, but determined these impairments had not caused "more than a minimal limitation in the claimant's ability to work since her alleged onset date." (Doc. 9-2, at 44).

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part

- 3 -

404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ determined that none of Heller's impairments considered individually or in combination met or equaled a Listing. (Doc. 9-2, at 45-47). Specifically, the ALJ considered Listings 1.02 (major dysfunction of a joint); 1.04 (disorders of the spine); 6.02; 11.04 (vascular insult to the brain); 12.04 (depressive, bipolar and related disorders); 12.06 (anxiety and obsessive-compulsive disorders); 14.09 (inflammatory arthritis). (Doc. 9-2, at 45-47).

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. The ALJ determined that Heller:

> Has the [RFC] to perform light work as defined in 20 C.F.R. § 404.1567(b) except she has the following non-exertional limitations: the claimant can understand, remember and carry out simple instructions, and she can make judgments on simple work-related decisions. She requires a job with only occasional decision making and only occasional changes in the work setting. She can have no interaction with the public, and only occasional interaction with co-workers and supervisors. She is able to maintain concentration and attention for two-hour segments over an eight-hour period, and she can complete a normal workweek without excessive interruptions from psychologically or physically based symptoms.

(Doc. 9-2, at 47).

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15 years, that was substantial

gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step.

The ALJ determined Heller is unable to perform past relevant work. (Doc. 9-2, at 51). The ALJ noted past relevant work as an appointment clerk, bookkeeper, receptionist, and administrative clerk, but, relying on the testimony of a vocational expert, determined that performance of each exceeded the RFC that Heller possessed. (Doc. 9-2, at 51).

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ made vocational determinations that Heller was 50 years old on the alleged onset date, defined as an individual closely approaching advanced age. 20 C.F.R. § 404.1563. (Doc. 9-2, at 51). The ALJ also found that Heller "has at least a high school education and is able to communicate in English. 20 C.F.R. § 404.1564. (Doc. 9-2, at 51). The ALJ determined that upon consideration of these factors, Heller's RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Doc. 9-2, at 52). The ALJ found that Heller could perform such occupations as mail clerk, marker, and office helper. (Doc. 9-2, at 52).

As a result of this analysis, the ALJ determined that Heller was not disabled and denied Heller's applications for benefits. (Doc. 9-2, at 52).

### III. STANDARD OF REVIEW

In order to receive benefits under Title II or Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the

burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f) ; 20 C.F.R. § 416.912(f).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Heller is disabled, but whether the Commissioner's finding that she is not disabled is supported

by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at \*1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## IV. DISCUSSION

As stated above, Heller raises five points of error in the ALJ's decision. She states that: the ALJ should have found Heller's impairments met or equaled Listings 12.04 and 12.06; substantial evidence does not support the ALJ's evaluation of opinion evidence; the ALJ's RFC is not supported by substantial evidence; the ALJ improperly evaluated Heller's GAF scores, and; substantial evidence does not support the ALJ's credibility assessment. (Doc. 13, at 1-2).

### A. THE ALJ DID NOT ERR IN CONCLUDING THAT HELLER'S IMPAIRMENTS DO NOT MEET LISTINGS 12.04 AND 12.06.

First, Heller argues that she should have been found disabled at step three, by virtue of her impairments meeting or equaling Listings 12.04 and 12.06. In order to meet Listing 12.04, a claimant must establish either a depressive or bipolar disorder, accompanied by extreme limitation in one of, or marked limitation in two of: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself; and well as "repeated" episodes of decompensation within the last 12 months. 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.04. In the alternative to the latter

requirement, a claimant may also be found to meet or equal Listing 12.04 if they establish a "serious and persistent" disorder accompanied by medical treatment, therapy, psychosocial support or a highly structured setting that is ongoing and diminishes the symptoms and signs or the disorder and a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of their daily life. 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.04.

The ALJ determined that Heller did not meet the "Paragraph B" criteria, as she only had mild limitations in activities of daily living, moderate difficulties in social functioning and with concentration, persistence or pace, and had no episodes of decompensation. (Doc. 9-2, at 46). Heller states that she has "marked" limitations in social functioning and with concentration, persistence, or pace; meeting the Paragraph B requirement of marked limitations in at least two categories. (Doc. 13, at 17-18). Heller refutes this finding, first points to the opinion of treating psychiatrist Dr. Anne Dall, who conducted a mental impairment questionnaire in which Dr. Dall found Heller had marked restrictions in both social functioning and maintaining concentration, persistence, or pace. (Doc. 9-16, at 39).

Listing requirements are strict, representing a higher level of severity than the statutory standard. *Orndorff v. Colvin*, 215 F.Supp.3d 391, 407 (M.D. Pa. 2016). At the time of the ALJ's decision, social functioning referred to a claimant's capacity to:

> interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. You may demonstrate impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation. You may exhibit strength in social functioning by such things as your ability to initiate social contacts with others, communicate clearly with others, or interact and actively participate in group activities. We also need to consider cooperative behaviors, consideration for

> others, awareness of others' feelings, and social maturity. Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers.
>
> 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00(C)(2).

In evaluating whether a claimant has "marked" limitations, the Commissioner does not consider the quantity of deficiencies in the above, but "by the nature and overall degree of interference with function. 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00(C)(2). Evaluation of concentration, persistence, or pace considers a claimant's "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00(C)(3).

The ALJ did not err in finding that Heller failed to meet or equal Listings 12.04 and 12.06. The ALJ notes that Heller is able to shop in stores and spend time with others (Doc. 9-6, at 30), and that doctors note pleasant interactions with her and appropriate mood and affect (Doc. 9-22). (Doc. 9-2, at 46). Further, in evaluating Heller's concentration, persistence, or pace, the ALJ noted that Heller is able to pay bills and use a checkbook (Doc. 9-6, at 29), and doctors observe normal concentration as well as intact recent and remote memory (Doc. 9-8). (Doc. 9-2, at 46). Treatment records from Dr. Dall also show consistent ability to complete concentration testing. (Doc. 9-17).

The ALJ, upon considering the above thus determined that Heller is not restricted with such severity as to meet or equal the Listings. While Dr. Dall opined as much, the ALJ found Heller's offered abilities contradicted these limitations. When tasked with reconciling conflicting evidence, it is permissible to resolve disputes finding more moderated restrictions, so long as substantial evidence supports such a conclusion. Having identified evidence to support

more moderate restrictions, the ALJ did not err in concluding that Heller did not meet or equal Listings 12.04 or 12.06.

> B. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S EVALUATION OF OPINION EVIDENCE.

In her second point of error, Heller argues that the ALJ erred in his evaluation of opinion evidence, as substantial evidence does not support the weight afforded to treating psychiatrist Dr. Dall, State Agency consultants Dr. Murphy and Dr. Legaspi, Dr. Dragann, PA-C Kortright, or physical therapist Brose. (Doc. 13).

Heller argues that the ALJ improperly afforded "limited" weight to the Mental Impairment Questionnaire completed by treating psychiatrist Dr. Dall.

Treating sources may be afforded controlling weight where their opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a case record. 20 C.F.R. § 404.1527(c)(2). Even where not entitled to controlling weight, the opinion of a treating source may still be given great weight based on the length of the treating relationship, nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, specialization of the source, and any other factors offered by the claimant. 20 C.F.R. § 404.1527(c). When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir.2000).

The ALJ addressed Dr. Dall's opinions twice in the ruling. First, he afforded great weight GAF scores assessed by Dr. Dall, finding these scores consistent with the record and Dr.

Dall's treatment notes. The ALJ then afforded limited weight to Dr. Dall's Mental Impairment Questionnaires completed on July 23, 2013 and July 23, 2014, finding the severity of limitations assessed to be overstatements upon consideration of the treatment history, the foundation on subjective complaints as opposed to objective testing, and noting that the findings make judgments on issues reserved for the Commissioner. Only the latter is challenged as unsupported by substantial evidence.

The ALJ's generally-cited evidentiary support for affording limited weight to Dr. Dall's Questionnaires is Dr. Dall's own treatment notes. (Doc. 9-17). The Commissioner argues these records reflect a stable treatment history and contain numerous references to social interactions that the ALJ may consider contrary to the level of severity determined by Dr. Dall.

"When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). The ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).

In choosing to reject the evaluation of a treating physician, an ALJ may not make speculative inferences from medical reports and may reject treating physician's opinions outright only on the basis of contradictory medical evidence. *Morales*, 225 F.3d at 317 (citations omitted). An ALJ may not reject a written medical opinion of a treating physician based on his or her own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317. An ALJ may not disregard the medical opinion of a treating physician based solely on his or her own "amorphous impressions, gleaned from the record and from his evaluation of the [claimant]'s credibility." *Morales*, 225 F.3d at 318 (citation omitted).

Mental impairments such as depression and anxiety, as diagnosed in Heller, may manifest in symptoms difficult to quantify through objective medical evidence. A lack of objective medical evidence is by itself insufficient to discredit claimant. SSR 16-3p. As noted by other Third Circuit courts, impairments such as depression and anxiety "while medically determinable, are difficult to substantiate by objective medical evidence." *Volage v. Astrue*, No. 11-CV-4413, 2012 WL 4742373, at *7 (D.N.J. Oct. 1, 2012). "[T]he reports of treating physicians, as well as the testimony of the claimant, become even more important in the calculus for making a disability determination" in circumstances involving impairments for which objective medical testing may not demonstrate the existence or severity of an impairment. *See Perl v. Barnhart*, No. 03-4580, 2005 WL 579879, at *3 (E.D. Pa. March 10, 2005) (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2002)). Thus, credibility becomes paramount in making the disability determination without objective medical evidence to refute the findings of a treating source. The treatment history and subjective nature of symptoms—the rationale cited for discounting Dr. Dall's opinion—each evoke credibility considerations.

The ALJ's opinion thus fails in two respects. First, to the extent the ALJ discounted Dr. Dall's opinion due to a perceived reliance upon subjective complaints, the ALJ erred by impermissibly making credibility determinations in lieu of identifying substantial evidence. In order to find that Dr. Dall's opinion that Heller had marked limitations was an "overstatement[] of the claimant's mental health conditions," the ALJ inherently had to render judgment on the credibility of the questionnaire and the source of the information contained therein. Rejection of a treating source opinion for being based on subjective complaints of the

claimant is not a reliance upon substantial evidence but on improper speculation. *See Poust v. Colvin*, No. 3:14-cv-1357, 2015 WL 3405235, at *5 (M.D. Pa. May 26, 2015).

Second, the ALJ's general identification of purported substantial evidence is insufficient to allow for meaningful judicial review. Only substantial contrary medical evidence allows for a treating source's opinion to be diminished. Thus, the ALJ must identify evidence contradicting the treating source's opinion—which the ALJ attempts to do by pointing to Dr. Dall's treatment notes. Again in *Poust*, the Court rejected an ALJ's determination of non-disability for the ALJ's improper consideration of two opinions by a treating source, the second of which was deemed "not supported by the overall objective medical record or the claimant's own testimony." *Poust*, 2015 WL 3405235, at *5. The Court found the ALJ's reasoning for discounting the second opinion failed partially because the ALJ did not adequately explain why the opinion was not supported by the record. *Poust*, 2015 WL 2405235, at *6.

The ALJ in this case found that the limitations contained in Dr. Dall's questionnaire "are not supported by Dr. Dall's records of normal mental status examinations," citing Exhibit 13F. (Doc. 9-2, at 51). The records cited contain 62 pages of treatment notes over the course of a year by multiple providers, some of which reflect stability and still others show suicidal ideation and an inability to maintain work attendance. (Doc. 9-17, at 10, 17, 21, 29, 42). Even at normal mental status, Heller demonstrated repeated issues of instances that appear to corroborate the limitations found, such as an inability to attend work, suicidal ideation, inability to be alone, with strangers, or in unfamiliar situations. At times, assessments contained in the treatment notes waver from finding that Heller could respond to and benefit from therapy to determining that she could not. While some positive and stable condition is noted, other periods demonstrate the contrary. A single piece of evidence is not substantial evidence if the

ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

The general citation by the ALJ is insufficient to evaluate whether or not the entirety of the record was properly considered in crafting the RFC. The Third Circuit has long maintained the need for adequate explanation for an ALJ's rejection of relevant evidence. *See Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). In light of this, the Court finds the explanation proffered does not satisfy the Court's inquiry on whether substantial evidence supports the conclusions of the ALJ in reaching a determination of non-disability. Due to the generality, as well as the noted rejection due to the subjective nature of Heller's articulated symptoms, the Court finds that the ALJ did not meet his burden of demonstrating that substantial evidence does not support the opinion of treating source Dr. Dall.

### V. CONCLUSION

For the above-stated reasons, the Court finds that substantial evidence does not support the Commissioner's decision. The Court thus orders the case be **REMANDED** with instructions to re-evaluate the matter, particularly the opinion of Dr. Dall and with regard to Heller's credibility. The Commissioner may also collect such evidence and hold hearings as she finds appropriate.

An appropriate Order follows.

Dated: September 19, 2017                                    *s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**